IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

JOHNNY R. WATSON,                    §
                                     §
        Plaintiff,                   §
                                     §
v.                                   §   CIVIL ACTION NO. H-10-3203
                                     §
HARRIS COUNTY, TEXAS,                §
                                     §
        Defendant.                   §

MEMORANDUM AND ORDER

Pending is Defendant Harris County, Texas' ("Defendant")
Motion for Summary Judgment (Document No. 13).  After carefully
considering the motion, response, reply, and applicable law, the
Court concludes as follows.

I.  Background

Plaintiff Johnny Watson ("Plaintiff") sues Defendant under
42 U.S.C. § 1983 for recovery of damages based upon his claim of a
Fourteenth Amendment violation in denying him reasonable care and
failing to protect him from serious physical harm.[1]  Plaintiff, at
the time 32 years old, was detained in the Harris County Jail twice
over a period of several months, first for three days in June 2008

---

[1] Document No. 1 at 4.

on a charge of criminal trespass,[2] and again in September 2008, on a charge of aggravated assault of a family member.[3]  It was on October 5, 2008, during his second detention, that he had a fall in the shower and could not move his legs.   After first giving Plaintiff immediate medical attention at the jail, the physician ordered that he be transferred to Ben Taub General Hospital for further assessment and an MRI, and Plaintiff was admitted the next day.   Plaintiff was diagnosed with paraplegia and a vascular malformation at the thoracic T6 level.  A thoracic laminectomy was successfully performed from T5-T7 and, after 12 days in the hospital, during which he also had physical therapy and rehabilitation, Plaintiff was discharged on October 18.   He declined a transfer to Quentin Meese Hospital to receive further rehabilitation, choosing instead to return to jail to handle his legal issues.   Plaintiff alleges that he remains paralyzed and wheelchair bound.

The uncontroverted summary judgment evidence of the medical attention Plaintiff received in response to his complaints or other events while he was in the Harris County Jail prior to his surgery at Ben Taub General Hospital is as follows:

---

[2] Document No. 14, ex. A-1 at 6 of 40.

[3] Id. at 11 of 40.

A.   **Plaintiff's First Detention**

| Date | Event or Complaint | Uncontroverted Summary Judgment Evidence of Medical Response |
|---|---|---|
| 6/7/08 | Plaintiff was detained in the Harris County Jail at 1200 Baker Street. | Intake interview indicates that he had gunshot wound to his left leg in 2005, and surgery on that leg one week ago.  He had a history of seizures and was blind in his left eye.  Plaintiff also indicated that he was taking Dilantin, Phenobarbital, and eye drops, and that he had a mental health history for which he was not taking medication.  **Plaintiff was examined by a physician.**  His evaluation notes indicate Plaintiff's history, described above.  The notes also indicate that the physician examined Plaintiff's chest, finding it "clear" and examined the lower leg wound and noted that there was no discharge or redness.  The physician prescribed Phenobarbital for 30 days and Dilantin for 30 days (and gave a dosage), gave a recommendation for a bottom bunk pass and crutches, and referred Plaintiff to Orthopedics for a lower leg x-ray.  The physician also gave Plaintiff a Vicodin and prescribed Tramadol for 30 days.  A **radiologist** examined the leg x-ray a day later, finding that there was no acute osseous injury.  Seale Aff. at 2. |
| 6/8/08 | Plaintiff had a fall. | The **medical staff** responded to call and found Plaintiff on the floor lying on his right side.  Plaintiff complained of back |

3

pain, that he was unable to move and was in severe pain.  Plaintiff was put on a backboard, carried on a stretcher, and taken to the clinic via stretcher. The notes indicate the medical staff's awareness that Plaintiff had a history of seizures and used crutches to walk.  **Plaintiff was examined by a physician.**  The physician noted that Plaintiff complained of back and right arm pain.  The physician ordered x-rays of his lumbar spine from two views and of his right elbow.  He prescribed Vicodin, to be taken orally, for 10 days.  A **radiologist** examined the x-rays the following day, finding that there was no indication of acute osseous injury to the spine or elbow and that the vertebral body heights and interspaces were intact.  Seale Aff. at 3; Document No. 15, ex. 2 at 00007-00009.

6/10/08   Plaintiff **released** from detention.

B.   **Plaintiff's Second Detention Three Months Later**

| Date | Event or Complaint | Uncontroverted Summary Judgment Evidence of Medical Response |
|---|---|---|
| 9/3/08 | Plaintiff was detained in the Harris County Jail at 1200 Baker Street. | On September 5, Plaintiff was medically screened again, and it was noted that he suffered from seizures and was taking Phenobarbital and Dilantin. **Plaintiff was examined by a physician**.  The physician |

4

|  | | prescribed Dilantin, Pnenobar-bital, and Tramadol for 30 days. He also filled out a Special Needs Assessment form for a bottom bunk and crutches.  Seale Aff. at 3. |
|---|---|---|
| 9/10/08 | Plaintiff and another inmate engaged in a fight regarding the telephones. | Plaintiff did not claim nor appear to have been injured. Nonetheless, Plaintiff was offered medical attention, which he declined by signing a medical refusal form.  Document No. 14, ex. A-1 at WATSON/ HC-00017-23. After a hearing by the Disci-plinary Committee, Plaintiff for his role in the fight was sanctioned with 7 days loss of visitation and commissary privileges.  Id. at WATSON/HC-00017-32. |
| 9/12/08 | Plaintiff had a fall and said that he was not able to get up. | **Medical staff responded** and noted that "[u]pon arrival patient laying on floor alert and oriented times three with no apparent distress.  Patient backboarded without difficulty and transferred to clinic via stretcher."  **Plaintiff was examined by a physician.** Plaintiff told the physician that "he passed out after feeling weak and dizzy."  The doctor ordered cervical and lumbar spine x-rays, and an EKG.  The EKG indicated a normal sinus rhythm.  The doctor prescribed 800mg of Ibuprofen to be taken at that time, and prescribed Flexeril for 7 days. A **radiologist** examined the x-rays the following day, determining that his lung fields were clear, his cardiac silhouette was within |

|         |                                                                                                                                                                                                       |                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                        |
|---------|-------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|
|         |                                                                                                                                                                                                       | normal limits, there was no indication of acute osseous injury, and his vertebral body heights and inter-spaces were intact.  Seale Aff. 3-4; Document No. 15, ex. 2 at 00022-23, 00026-27.                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                              |
| 9/15/08 | Plaintiff complained of back pain and was wheeled to the clinic (despite stating he did not want medical treatment). Upon arrival at the clinic, Plaintiff slid out of his wheelchair and fell on the floor. | **Plaintiff was examined by a physician**.  Plaintiff complained of a cough and dyspnea and stated he thought he was developing a blood clot and that he had back pain from falling in the shower. Plaintiff noted that he had previously had a pulmonary embolus in 2007 and that he was not currently taking any anti-coagulant medication.  The **physician** determined that Plaintiff had a cough, left leg pain, and lower back pain; he prescribed a Z-pak, ECASA for 30 days, and a walker.  The **physician** completed a Special Needs Advisement form for the walker, crutches, and bottom bunk.  Two days later, Plaintiff signed a "Keep on Person" medication administration record receipt for Zithromax and enteric coated aspirin.  Seale Aff. at 4; Document No. 15, ex. 2 at 00028-30. |
| 9/18/08 | Plaintiff complained of a cough. | **Plaintiff was examined by a physician**.  Plaintiff told the physician about his history of pulmonary embolus in 2007, and complained of blood streaked sputum, which had occurred that day.  The **physician** ordered a chest x-ray, which was interpreted by a **radiologist** the following day.  The x-ray |

6

indicated no change since the previous x-ray on September 12; Plaintiff's lung fields were clear and his cardiac silhouette was within normal limits.  The physician filled out a consultation request that a CT scan be made of Plaintiff's chest at the Harris County Hospital District ("HCHD").  Seale Aff. at 5; Document No. 15, ex. A-l at WATSON/HC-0097.

| | | |
|---|---|---|
| 9/21/08 | Plaintiff complained of an eye injury or discomfort. | **Plaintiff was examined by a physician**.  The **physician** determined that Plaintiff had a stye in his right lower lid.  Plaintiff informed the physician that he was supposed to be on eye drops for right eye, but he did not know the name of the medication.  The **physician** noted that Plaintiff's doctor needed to be called to find out the name of the medication.  The **physician** prescribed Naproxen for 30 days and discontinued Tramadol.  Seale Aff. at 5. |
| 10/1/08 | Follow-up on Plaintiff's complaint about cough. | Action taken to ask HCHD to do CT scan requested by physician on September 18.  Document No. 15, ex. A-l, at WATSON/HC-0097. |
| 10/5/08 | Plaintiff had a fall in the shower. | **Medical staff** arrived, and Plaintiff complained of blacking out and hitting the floor and said he could not feel his legs.  **Plaintiff was examined by a physician**.  The physician ordered x-rays of Plaintiff's right shoulder, lower spine, and left ankle.  The **physician** ordered Plaintiff to be transferred to |

7

> **Ben Taub General Hospital** for
> further assessment and an MRI.
> **Plaintiff was admitted to Ben
> Taub General Hospital on October
> 6, 2008, and remained there until
> October 18, 2008.**  Plaintiff had
> an initial diagnosis of para-
> plegia, and a secondary diagnosis
> of a vascular malformation at the
> thoracic T6 level.  An MRI showed
> an epidural hemangioma or mass
> approximately from T5-T7.  A
> thoracic laminectomy was
> performed to excise the vascular
> malfunction, followed by physical
> therapy and rehabilitation.
> Seale Aff. at 5-6; Document
> No. 15, ex. 2 at 00051, 55-60.

## II.   Discussion

### A.   Summary Judgment Standard

Rule 56(a) provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  Once the movant carries this burden, the burden shifts to the nonmovant to show that summary judgment should not be granted.  Morris v. Covan World Wide Moving, Inc., 144 F.3d 377, 380 (5th Cir. 1998).  A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials in a pleading, and unsubstantiated assertions that a fact issue exists will not suffice.  Id.  "[T]he nonmoving party must set forth specific facts showing the existence

8

of a 'genuine' issue concerning every essential component of its case." Id. "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record . . .; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1). "The court need consider only the cited materials, but it may consider other materials in the record." Id. 56(c)(3).

In considering a motion for summary judgment, the district court must view the evidence "through the prism of the substantive evidentiary burden." Anderson v. Liberty Lobby, Inc., 106 S. Ct. 2505, 2513 (1986). All justifiable inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 106 S. Ct. 1348, 1356 (1986). "If the record, viewed in this light, could not lead a rational trier of fact to find" for the nonmovant, then summary judgment is proper. Kelley v. Price-Macemon, Inc., 992 F.2d 1408, 1413 (5th Cir. 1993). On the other hand, if "the factfinder could reasonably find in [the nonmovant's] favor, then summary judgment is improper." Id. Even if the standards of Rule 56 are met, a court has discretion to deny a motion for summary judgment if it believes that "the better course

9

would be to proceed to a full trial." <u>Anderson</u>, 106 S. Ct. at 2513.

B. <u>Municipal Liability</u>

The Civil Rights Act of 1866 creates a private right of action for redressing the violation of federal law by those acting under color of state law. 42 U.S.C. § 1983; <u>Migra v. Warren City Sch. Dist. Bd. of Educ.</u>, 104 S. Ct. 892, 896 (1984). Section 1983 is not itself a source of substantive rights but merely provides a method for vindicating federal rights conferred elsewhere. <u>Albright v. Oliver</u>, 114 S. Ct. 807, 811 (1994).

A governmental entity can be sued and subjected to monetary damages and injunctive relief under section 1983 only if its official policy or custom causes a person to be deprived of a federally protected right. <u>Monell v. Dep't of Soc. Servs.</u>, 98 S. Ct. 2018, 2037-38 (1978). A municipality may not be held liable under section 1983 on the basis of *respondeat superior* or vicarious liability. <u>Id.</u> Municipal liability under a section 1983 claim requires proof of (1) a policy maker; (2) an official policy; and (3) a violation of a constitutional right whose moving force is the policy or custom. These three elements are necessary to distinguish individual violations perpetrated by local government employees from those that can be fairly identified as actions of the government itself. <u>Id.</u>

C.   Analysis

Plaintiff argues that Defendant acted with deliberate indifference by refusing to conduct additional medical evaluation in response to Plaintiff's complaints and falls.[4]  Plaintiff does not challenge Defendant's summary judgment evidence and, in fact, substantially corroborates the medical responses Defendant made to Plaintiff's series of medical needs.[5]

A pretrial detainee's claim for denial of adequate medical care flows from the procedural and substantive due process clause of the Fourteenth Amendment.  Wagner v. Bay City, 227 F.3d 316, 324 (5th Cir. 2000).  The Fifth Circuit applies the same standard for assessing constitutional claims of denial of medical care to

---

[4] Document No. 15 at 7-8.

[5] Id.  In his complaint, Plaintiff alleges that on September 18, 2008, a physician ordered a CT scan and blood work, including a Complete Blood Count, to be completed at Ben Taub General Hospital.  Document No. 1 at 5.  Plaintiff further alleges that a Complete Blood Count is one way of diagnosing a spinal vascular malformation.  Id. at 6.  Plaintiff's medical records show that a physician requested a CT scan on September 18, 2008 but do not show that any blood work was ordered.  Furthermore, Dr. Michael Seale declares in his affidavit that "a blood count would not provide any information about a spinal vascular malformation."  Document No. 15, ex. A at 16.  Plaintiff provides no evidence in support of his allegations and does not challenge Dr. Seale's statement.

Plaintiff also alleges that his anti-seizure medication was inconsistently administered during the three-day period prior to his September 5 fall and that anti-depressant medication prescribed by a physician at some point during Plaintiff's detention was never administered.  Document No. 1 at 3-4.  Plaintiff does not raise this issue nor provide any evidence in support of these allegations in his response to summary judgment.

pretrial detainees under the Fourteenth Amendment as it does for denial of medical care to convicted inmates under the Eighth Amendment.  Gibbs v. Grimmette, 254 F.3d 545, 548 (5th Cir. 2001) (citing Hare v. City of Corinth, 74 F.3d 633, 643 (5th Cir. 1996); Barrie v. Grand Cnty., Utah, 119 F.3d 862, 868-69 (10th Cir. 1997)).

The Eighth Amendment's prohibition against cruel and unusual punishment forbids deliberate indifference to the serious medical needs of prisoners.  Estelle v. Gamble, 97 S. Ct. 285, 291 (1976). "Deliberate indifference is an extremely high standard to meet." Domino v. Tex. Dep't of Criminal Justice, 239 F.3d 752, 756 (5th Cir. 2001).  Deliberate indifference requires a showing of unnecessary and wanton infliction of pain, McCormick v. Stalder, 105 F.3d 1059, 1061 (5th Cir. 1997), that rises "to the level of egregious intentional conduct."  Gobert v. Caldwell, 463 F.3d 339, 351 (5th Cir. 2006).

"Disagreement with medical treatment does not state a claim for Eighth Amendment indifference to medical needs."  Norton v. Dimazana, 122 F.3d 286, 292 (5th Cir. 1997) (citations omitted). A plaintiff must allege and raise a fact issue as to whether prison officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs."  Johnson v. Treen, 759 F.2d 1236, 1238 (5th

12

Cir. 1985).  Deliberate indifference is especially difficult to show when the inmate has been provided with ongoing medical treatment.  "Unsuccessful medical treatment, acts of negligence, or medical malpractice do not constitute deliberate indifference." Gobert, 463 F.3d at 346.  Records showing that an inmate was given medical examinations, treatments, and medications may rebut an inmate's allegations of deliberate indifference in denying or delaying medical care.  *See* Varnado v. Lynaugh, 920 F.2d 320, 321 (5th Cir. 1991).

The summary judgment evidence shows that Plaintiff received medical attention in response to each of his medical complaints and falls.  Plaintiff has not claimed one instance of illness, fall, or injury for which he did not receive timely medical attention from physicians and nurses, including tests, diagnoses, and prescription medication.  At most, Plaintiff argues that the treating physicians were negligent in not prescribing the tests that he believes would have revealed earlier the spinal vascular malformation.  But mere negligence does not constitute deliberate indifference.[6]  As discussed above, Plaintiff's desire for additional diagnostic testing also does not satisfy the high standard that must be met to

---

[6] Plaintiff, in fact, has offered no expert medical testimony even to show that the physicians and other medical staff responding to Plaintiff's needs were so much as negligent in their administration of medical attention.  Likewise, the record is wholly void of any evidence that any of them ever acted toward Plaintiff with deliberate indifference to his needs.

show deliberate indifference.  *See* Norton, 122 F.3d at 292 (Plaintiff's allegations that "medical personnel should have attempted different diagnostic measures or alternative methods of treatment" does not state a claim for indifference to medical needs); Domino, 239 F.3d at 756 ("[T]he decision whether to provide additional treatment is a classic example of a matter for medical judgment.") (citation and quotation marks omitted).[7]

In sum, there is no summary judgment evidence that Defendant's officials and medical personnel "refused to treat [Plaintiff], ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs."  Johnson, 759 F.2d at 1238.  Accordingly, it is

---

[7]  Plaintiff relies heavily on a Justice Department investigation and report criticizing the Harris County Jail.  This 2009 report was contested by Defendant in an extensive response to the report.  Plaintiff contends that the report supports his claim that the customs or policy of Defendant caused the constitutional violation alleged in this case.  The uncontroverted evidence in this case, however, shows that Plaintiff during his short time in the Harris County Jail regularly received timely medical attention and treatment in response to his complaints, including his falls, and there is no evidence that Plaintiff's constitutional right was violated by deliberate indifference to his medical needs. Accordingly, the extraneous evidence of the Justice Department report and Harris County's response to it (which do not identify or pertain to Plaintiff) are entirely irrelevant.  This report and the County's response to it are therefore disregarded, and Defendant's objection is DENIED as moot.

ORDERED that Defendant's Motion for Summary Judgment is GRANTED, and Plaintiff's case is DISMISSED on the merits.

The Clerk will enter this Order, providing a correct copy to all counsel of record.

SIGNED in Houston, Texas, on this 23rd day of February, 2012.

_____
EWING WERLEIN, JR.
UNITED STATES DISTRICT JUDGE